# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JERONE MCDOUGALD,
     Plaintiff,

vs.

LIEUTENANT ESHAM, et al.,
     Defendants.

Case No. 1:16-cv-497
Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

Plaintiff Jerone McDougald, an inmate at the Southern Ohio Correctional Facility

("SOCF") proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983 alleging that

prison officials violated his Eighth Amendment rights in relation to several incidents where he

was directly and indirectly exposed to pepper spray. (*See* Docs. 5, 7, 8). This matter is before

the Court on defendants' motion for summary judgment (Doc. 51) and plaintiff's response in

opposition. (Doc. 69). This matter is also before the Court on plaintiff's motion for an order

compelling discovery. (Doc. 68).

## I. Background

### A. Plaintiff's allegations

Plaintiff's complaint and amended complaints allege that he was directly exposed to OC

["oleoresin capsicum"]/pepper spray on July 22, 2015 and August 21, 2015. He also alleges that

on February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016,

he was exposed to passive or secondhand pepper spray that resulted in breathing difficulties,

swelling of his mucous membranes, a runny nose, burning eyes, and headaches. (Docs. 5, 7, 8).

Plaintiff alleges that he requested medical treatment following the pepper spray exposure but was

denied by defendants Lt. Eshem[1]; Correctional Officer ("C.O.") Andre; Sgt. Bailey; C.O. Crabtree; C.O. Distel; Lieutenant Dyer; Warden Erdos; C.O. Grooms; C.O. Hale; Lt. Joseph; C.O. Keating; Mrs. Lightle; C.O. Queen; C.O. Stone; C.O. Porter; C.O. Mullens; and Lt. Smith.[2] Plaintiff asserts Eighth Amendment claims against defendants for the alleged pepper spray incidents.

## B. Pleadings Background

Plaintiff filed a motion for leave to proceed *in forma pauperis* in this action on April 27, 2016. (Doc. 1). Thereafter, the Court granted plaintiff leave to submit amended complaints. (Doc. 6). On October 4, 2016, the Court recommended that plaintiff's additional motions for leave to amend be denied. (Doc. 25). On November 30, 2016, the District Court adopted this Court's recommendation. (Doc. 26). On July 17, 2017, defendants Andre, Bailey, Crabtree, Distel, Dyer, Erdos, Eshem, Grooms, Hale, Joseph, Keating, Lightle, Queen, and Stone filed their first motion for summary judgment. (Doc. 51). In light of a discovery order granting plaintiff's motion to compel, the Court granted plaintiff until February 7, 2018 to file a response in opposition to defendants' motion for summary judgment. (Doc. 59). On February 5, 2018, plaintiff filed a response in opposition to defendants' motion for summary judgment, which solely requests additional discovery. (*See* Doc. 69).

## C. Discovery Background

The Court entered a calendar order on September 16, 2016 setting an initial discovery deadline of March 19, 2017. (Doc. 22). On February 21, 2017, plaintiff filed his first motion for an order compelling defendants to produce documents for inspection and copying and compelling defendant Ron Erdos to fully answer interrogatories. (Doc. 29). In response,

---

[1] The proper spelling of this defendant's name is Eshem, not Esham.
[2] C.O. Porter, C.O. Mullens, and Lt. Smith have not yet been properly served with process.

defendants explained that they had been working in good faith to comply with plaintiff's discovery requests, but needed additional time to gather all of the necessary information and documentation. (Doc. 33). On March 3, 2017, the Court issued an order denying plaintiff's motion to compel and granting both parties' requests for additional time to complete discovery. (Doc. 35). The Court entered a modified discovery deadline of June 15, 2017. (*Id.*).

On June 9, 2017, plaintiff filed a second motion for an order compelling defendants to produce documents for inspection and copying and compelling defendant Erdos to fully answer interrogatories. (Doc. 47). On November 13, 2017, the Court ordered defendants to file a response to plaintiff's motion to compel. (Doc. 55). Defendants did not timely comply with this order, and on December 21, 2017, the Court granted plaintiff's second motion to compel and ordered defendants to respond to plaintiff's first request for production of documents and first set of interrogatories. (Doc. 59).

Following the Court's order granting the motion to compel, defendants submitted a status report on the discovery issues outlined above on December 27, 2017. Defendants aver that they complied with plaintiff's discovery requests in accordance with the Court's December 21, 2017 Order. (Doc. 63 at 1). Defendants explained that on July 18, 2017, they sent plaintiff a letter that included defendant Erdos' interrogatory responses and defendant Eshem's interrogatory responses as an attachment. (*Id.*). Defendants stated that on December 4, 2017, they sent plaintiff a document with an updated response to his request for production of documents. (*Id.*). Defendants indicated that on December 21, 2017, they complied with the Court's order and resent plaintiff the following documents: Defendant Warden Erdos' Responses to Plaintiff's First Set of Interrogatories (originally mailed on July 18, 2017); Defendant Lt. Eshem's Response to Plaintiff's First Set of Interrogatories (originally mailed on July 19, 2017); and Defendants'

Updated Response to Plaintiff's Request for Production of Documents (originally mailed on December 4, 2017). (*Id.* at 2).

On February 1, 2018, plaintiff filed a third motion for an order compelling discovery. (Doc. 68).

## II. Motion to Compel (Doc. 68) and Fed. R. Civ. P. 56(d) Declaration Requesting Additional Discovery (Doc. 69).

Plaintiff asks the Court to compel defendants to produce additional discovery. (Doc. 68). Plaintiff requests that defendants be compelled to produce the following documents for inspection and copying: (1) any and all incident reports, conduct reports or copies involving the incidents on February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016 as mentioned in the complaint; (2) SOCF rules and regulations on the use of OC spray; (3) DVR footage of incidents on February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016 as mentioned in the complaint; (4) DVR footage of an incident on August 21, 2015 in the H-corridor en route to the J-2 housing unit at 4:30-5:30 p.m.; (5) DVR footage of an incident on July 22, 2015 at 5:00-5:30 p.m. showing plaintiff being escorted to the shower with his cuffs on; and (6) the Correctional Institutional Inspection Committee use of force checklist. (Doc. 68). In addition to his motion to compel, plaintiff asserts as his only argument in opposition to defendants' motion for summary judgment that additional discovery is needed. (*See* Doc. 69).

In their status report on discovery, defendants represent they have fully complied with the Court's December Order and produced all requested discovery. (Doc. 63). Instead of specifically responding or objecting to defendants' status report, plaintiff has filed another motion to compel discovery, generally reiterating the need for certain items of discovery. Plaintiff has not identified whether defendants have objected to certain items; whether they have

4

simply failed to comply with the request; or whether they have indicated that certain items he is requesting, such as DVR footage of certain events, do not exist. (*See, e.g.*, Doc. 33 at 4: "If DVR footage exists as to alleged claims Plaintiff brings herein, he will be able to review same under institutional rules; however, he is not permitted to keep footage."). Plaintiff has not attached to his motion defendants' responses to his discovery requests which he believes are deficient to enable the Court to discern what deficiencies actually exist. *See* S.D. Ohio Civ. R. 7.2(e). Without any clarification from plaintiff on the deficiencies in defendants' discovery responses, the motion to compel is denied.

Plaintiff also appears to seek an extension of time to respond to the motion for summary judgment based on alleged discovery denials. Attached to his "motion opposing summary judgment of defendants" is plaintiff's declaration pursuant to Fed. R. Civ. P. 56(d). (Doc. 69 at 2). In his declaration, plaintiff requests: (1) any and all incident reports, conduct reports involving disputed incidents on February 5, 2016, February 23, 2016, March 1, 2016,[3] March 28, 2016, and March 31, 2016 as mentioned in his complaint; (2) SOCF rules and regulations on the use of OC spray; and (3) DVR footage of incidents on February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016 as mentioned in his complaint. (McDougald Declaration, Doc. 69 at ¶ 4). Plaintiff alleges, "This discovery material is relevant due to the documentation of how much OC spray plaintiff was exposed to, was the force excessive, and whats (sic) the rules governing the use of OC spray and the DVR footage capturing these unlawful encounters, and was plaintiff denied medical care after the fact." (*Id.* at ¶ 5).

---

[3] Plaintiff states in his declaration that he seeks incident reports related to secondhand pepper spray exposure from March 1, 2016; however, the date alleged in plaintiff's amended complaint is March 7, 2016.

Rule 56(d)[4] governs the procedures to be followed when a party alleges additional

discovery is necessary to respond to a motion for summary judgment:

> The affidavit or declaration required by the rule must "indicate to the district court
> [the party's] need for discovery, what material facts [the party] hopes to uncover,
> and why [the party] has not previously discovered the information." *Cacevic v.
> City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citing *Radich v. Goode*,
> 866 F.2d 1391, 1393-94 (3d Cir. 1989)). A motion under Rule 56(d) may be
> properly denied where the requesting party "'makes only general and conclusory
> statements [in the supporting affidavit or declaration] regarding the need for more
> discovery and does not show how an extension of time would have allowed
> information related to the truth or falsity of the [document] to be discovered,'"
> *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (quoting *Ironside
> v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)), or where the affidavit or
> declaration "lacks 'any details' or 'specificity.'" *Id.* (quoting *Emmons v.
> McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989)). The importance of complying
> with Rule 56(d) cannot be over-emphasized. *See Cacevic*, 226 F.3d at 488.
> Finally, whether or not to grant a request for additional discovery falls within the
> trial court's discretion. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th
> Cir. 2009).

*Bloodworth v. Timmerman-Cooper*, No. 2:10-cv-1121, 2013 WL 950931, at *1 (S.D. Ohio Mar.

12, 2013).

The discovery sought by plaintiff set forth in his declaration relates to his alleged

exposure to passive or secondhand pepper spray on February 5, 2016, February 23, 2016, March

7, 2016, March 28, 2016, and March 31, 2016. These requests involve incidents where he was

not the direct target of the pepper spray. Rather, pepper spray was used on other inmates and

allegedly wafted into plaintiff's cell. It is not clear how incident reports, conduct reports, or

DVR footage involving the alleged misconduct of *other* inmates who were pepper sprayed and

---

[4] Rule 56(d) provides:

When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its opposition, the court may:

  (1) defer considering the motion or deny it;
  (2) allow time to obtain affidavits or declarations or to take discovery; or
  (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

SOCF rules and regulations regarding the use of OC spray under these circumstances have any relevance to the secondhand pepper spray exposure plaintiff allegedly suffered and the alleged denial of medical care he now claims. Plaintiff has failed to justify a further delay in this case to obtain discovery related to secondhand pepper spray exposure. Moreover, plaintiff has not indicated in his Rule 56(d) declaration that he needs discovery related to the direct pepper spray exposure incidents on July 22, 2015 and August 21, 2015 in order to respond to defendants' motion for summary judgment, which also justifies forbidding additional discovery that would needlessly delay this matter further. Therefore, in addition to plaintiff's third motion to compel, plaintiff's request for a further extension of time to complete discovery under Rule 56(d) is also denied. In light of the resolution of these discovery issues, the Court will now turn to defendants' motion for summary judgment.

### III. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## IV. Exhaustion of Administrative Remedies

### A. Legal Standard

Exhaustion of administrative remedies "is mandatory under the [Prison Litigation Reform Act ("PLRA")] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Because defendants bear the burden of persuasion on exhaustion, their "initial summary judgement burden is 'higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455-56 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (in turn quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000))).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim,

prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

## B. Resolution

In his verified complaint, plaintiff states that he did not pursue the prison grievance procedure because he is "on a[n] informal complaint and grievance restriction, and [he has] been denied avenues to address the problem." (Doc. 5 at 3). Nevertheless, with respect to the pepper spray incidents on February 5, 2016, March 28, 2016, and March 31, 2016, plaintiff states he sent "kites" to the institutional inspector requesting "a grievance." (Doc. 5 at 7-8). Plaintiff states that because he was on an "informal complaint, grievance restriction" he could only request grievance forms for incidents involving a physical injury. (*Id.*). Plaintiff states that defendant Lightle denied plaintiff grievance forms for these three incidents because his concerns were not "life-threatening." (*Id.*). Plaintiff claims that defendant Lightle was therefore "deliberately indifferent to [his] safety by virtue of failing to investigate and/or take corrective action." (*Id.*).

Defendants argue that plaintiff failed to exhaust his administrative remedies prior to filing his federal complaint. (Doc. 51 at 6). Defendants maintain that even though plaintiff was on a grievance restriction, he had alternate channels to file grievances or contact institutional staff in the event of a medical emergency. (*Id.* at 7-8).

Linnea Mahlman, the inspector of institutional services at SOCF, attests that plaintiff was placed on restriction for filing vexatious, duplicative, and repetitive grievances. (Mahlman Declaration, Doc. 51-1 at 2, ¶ 9). Defendants have submitted copies of the letters sent to plaintiff on July 7, 2015, August 10, 2016, January 19, 2016, and June 26, 2017 describing his grievance restrictions. (Doc. 51-2 at 1-4). The letters state that although plaintiff was placed on a grievance restriction, he could pursue issues that present a substantial risk of physical injury, such as medical concerns, through the inmate grievance procedure. (*Id.*). The letters also state

11

that plaintiff could address emergency issues through a kite to the institutional inspector or in person to institutional staff. (*Id.*). Ms. Mahlman attests that while she was on vacation, defendant Lightle, her secretary who is now retired, may have sent plaintiff a response to his kite requesting a grievance form. (Mahlman Declaration, Doc. 51-1 at 2, ¶ 13). Ms. Mahlman attests that it is "highly improbable that the assistant institutional inspector would have refused grievance forms to inmate McDougald where a medical emergency would have existed nor would she deny any forms to the inmate." (*Id.* at ¶ 14). Ms. Mahlman attests that she has never witnessed corrections officers refusing a kite or informal complaint to an inmate where there is a medical emergency. (*Id.* at ¶ 15). She further attests that if an inmate had a medical emergency, correctional officers would contact the infirmary and the inmate would receive appropriate treatment and care. (*Id.* at ¶ 16).

In his verified complaint, plaintiff admits that he failed to exhaust his administrative remedies. (Doc. 5 at 3). Even where an inmate is on a grievance restriction, he still must exhaust his available administrative remedies. *See, e.g., Sarah v. Unknown Heidtman*, 97 F. App'x 550 (6th Cir. 2004) (holding that a prisoner on modified access status failed to exhaust administrative remedies where she did not make any attempt to obtain a grievance form from the coordinator); *Thompson v. Zwikler*, No. 1:13-cv-167, 2013 WL 5538882, at *5 (W.D. Mich. Oct. 8, 2013) ("A prisoner cannot be permitted to make the MDOC's grievance system unavailable through his own abuse of the system. Any contrary approach would produce the absurd result of encouraging prisoners to abuse the grievance process in order to be placed on grievance restriction and thereby obtain the substantial reward of a quick and easy method of getting around the PLRA's entire statutory exhaustion requirement"). "Courts in this circuit have consistently upheld procedures which modify or restrict the ability of prisoners (who have been

deemed abusive grievance filers) to file unfettered grievances." *Odom v. Helton*, No. CIV.A. 12-80, 2013 WL 4012889, at *7 (E.D. Ky. Aug. 6, 2013) (citing *Hartsfield v. Mayer*, No. 95–1411, 76 F.3d 378 (table), 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996) (unpublished order)); *Brooks v. Yates*, No. 1:09–cv–922, 2012 WL 2115301, at *13-14 (S.D. Ohio Mar. 30, 2012) (concluding that a prisoner's ability to pursue his administrative remedies was not significantly impaired by the temporary and limited-in-scope restrictions imposed based upon his prior abuse and misuse of the grievance procedure) (Report and Recommendation), *adopted*, 2012 WL 2091529 (S.D. Ohio June 11, 2012)).

Here, plaintiff was placed on an "Informal Complaint Resolution (ICR) Restriction" on four occasions due to his abuse and misuse of the inmate grievance procedure. (Doc. 51-2). This meant that plaintiff was not permitted to file an Informal Complaint Resolution (step one of the grievance process) during his period of restriction. Nevertheless, despite this restriction, plaintiff was still able to file grievances under a special procedure. Plaintiff was permitted to pursue issues that present a substantial risk of physical injury, such as medical concerns, through the inmate grievance procedure. Plaintiff had unrestricted access to the kite system and was permitted to address emergency issues through a kite to the institutional inspector or in person to institutional staff. (*See* Doc. 51-2 at 1: "Access to the inmate grievance procedure for an 'emergency' issue will be determined by the institutional inspector."). Plaintiff's admission that he failed to follow these procedures, with the exception of the three dates discussed below, requires that his complaint be dismissed for failure to exhaust his prison administrative remedies.

With respect to the pepper spray incidents on February 5, 2016, March 28, 2016, and March 31, 2016, plaintiff states he sent "kites" to the institutional inspector requesting "a

grievance" (Doc. 5 at 7-8), suggesting that he attempted to exhaust his remedies in accordance with the grievance restriction. Because plaintiff notes that he was refused a grievance form while on a grievance restriction, the Court must determine whether plaintiff's failure to exhaust the February and March 2016 incidents should be excused based on defendant Lightle's response to plaintiff's request for a grievance form.

Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner "has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014). A prisoner who simply alleges that prison officials did not provide him with the proper forms to follow administrative procedures does not demonstrate a genuine issue of material fact that he was prevented from exhausting his administrative remedies. *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001). Rather, a prisoner must present evidence "that there was no other source for obtaining a grievance form or that he made [another] attempt to obtain a form or to file a grievance without a form." *Id. See also Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 1281634, at *3 (S.D. Ohio Mar. 26, 2013) (reiterating that plaintiff must show that his remedies were unavailable because defendants thwarted his efforts to follow administrative procedures, not merely that the defendants did not provide him with the necessary forms) (Report and Recommendation), *adopted*, 2013 WL 5773932 (S.D. Ohio Oct. 24, 2013); *Kennedy v. Wurth,* 36 F. App'x 553, 554 (6th Cir. 2002) ("[t]his Court has held that it is inadequate for a prisoner to allege that he was denied a form for a grievance . . . he must show that he attempted to file a grievance without the form"); *Martin v. Johnson,* 72 F. App'x 256, 257-58 (6th Cir. 2003) (same).

Here, the facts alleged in plaintiff's verified complaint establish no more than defendant Lightle failed to provide him with a grievance form for the incidents on February 5, 2016, March 28, 2016, and March 31, 2016. With respect to these incidents, plaintiff has presented no evidence demonstrating that defendant Lightle thwarted his attempts to file a grievance beyond informing him that his concerns were not life-threatening. Nor has plaintiff presented evidence that he made another attempt to file kites with the institutional inspector (Ms. Mahlman) or file a grievance without the necessary form. As Ms. Mahlman's declaration and the letters establish, although plaintiff had a grievance restriction, he still maintained a right to the grievance procedure in the event of a medical emergency and had alternate avenues of requesting a grievance form. Plaintiff had unlimited access to the kite system to communicate with administrative personnel and also could have contacted corrections officers to obtain a grievance form and address his medical concerns through the inmate grievance procedure. (Mahlman Declaration, Doc. 51-1 at 2, ¶¶ 16, 22). On these facts, the Court must conclude that plaintiff failed to exhaust his administrative remedies for all of the pepper spray incidents and the Court cannot conclude that plaintiff's failure to exhaust his administrative remedies should be excused for the incidents on February 5, 2016, March 28, 2016, and March 31, 2016.

Consistent with the foregoing, plaintiff's claims should be dismissed without prejudice for failure to exhaust his administrative remedies. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Tooms*, 215 F.3d 640, 642 (6th Cir. 2000)) ("A dismissal under §1997e should be without prejudice."). However, in the event that the recommendation on the exhaustion issue is not adopted, the Court will also consider defendants' motion for summary judgment on the merits of plaintiff's Eighth Amendment claims.

## V. Eighth Amendment Claims

### A. Legal Standard for Excessive Force under the Eighth Amendment

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury. . . ." *Id*. at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id*. (quoting *Hudson*, 503 U.S. at 7).

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use

force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). Accordingly, the Sixth Circuit has found no Eighth Amendment violation in numerous cases involving "the use of . . . chemical agents against recalcitrant prisoners." *Id.* (quoting *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings*, 93 F. App'x at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray.")). *See also Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), *adopted*, 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order.")). *But see Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

**B. Legal Standard for Denial of Medical Care under the Eighth Amendment**

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th

Cir. 2004) (quoting *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta*, 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health; (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

### C. Direct pepper spray application—the July 22, 2015 and August 21, 2015 incidents

Plaintiff's amended complaint from June 10, 2016 involves incidents where he was directly exposed to pepper spray. (*See* Doc. 7). On July 22, 2015, plaintiff alleges that defendant Hale pepper sprayed him for no reason after he asked for cleaning supplies. (*Id.* at 1). Plaintiff alleges that he was "left to choke and suffocate and left with OC spray in [his] eyes and face and left to suffer the mitigating effects of the OC spray with no offer of decontamination or medical attention." (*Id.*). Plaintiff alleges that defendant Hale used excessive force and was

18

deliberately indifferent to his medical needs in violation of the Eighth Amendment. (*Id.* at 1-2).

Plaintiff alleges that defendants Stone and Crabtree were also at the scene and denied him

medical attention. (*Id.*). On August 21, 2015, plaintiff alleges that he was pepper sprayed by

Officer Porter after being involved in a fight.[5] (*Id.* at 1). Plaintiff alleges that defendants

Keating and Andre, and Officer Porter and Lieutenant Smith refused decontamination and were

deliberately indifferent to his need for medical treatment after he suffered breathing problems

and other mitigating effects from the pepper spray. (*Id.*).

Defendants argue that summary judgment should be granted in their favor on plaintiff's

Eighth Amendment excessive force claim because the use of pepper spray under the

circumstances constituted a reasonable use of force to gain control of plaintiff. (Doc. 51 at 10).

Defendants state that plaintiff omits pertinent facts related to these two incidents.[6] On July 22,

2015, plaintiff was pepper sprayed by defendant Hale after he spread feces on his cell wall and

threw his food tray at an officer. (Doc. 51 at 10; Doc. 51-5 at 1-2). Plaintiff was checked by

medical personnel and released back into segregation. (Doc. 51 at 10; Doc. 51-5 at 1-5). On

August 21, 2015, plaintiff was pepper sprayed by Officer Porter after he failed to follow direct

orders to stop fighting with another inmate. (Doc. 51 at 10; Doc. 51-6 at 1-9). Nurse Hart

medically examined plaintiff for discomfort in his eyes and plaintiff stated: "I'm cool, but my

eyes burn." Nurse Hart advised plaintiff to flush any affected areas with water. (Doc. 51 at 10;

Doc. 51-4 at 1; Declaration of Roseanna Clagg, R.N., Doc. 51-3 at ¶ 9). Moreover, Roseanna

Clagg, Health Care Administrator at SOCF, attests that in instances of direct exposure to pepper

---

[5] Officer Porter has not been properly served as a defendant in this action.
[6] In failing to file a responsive memorandum in opposition to defendant's motion for summary judgment or file any evidence in opposition, plaintiff has failed to offer any facts or evidence to support his claims. As such, the facts as presented by defendant are undisputed.

spray, inmates are offered decontamination, including a shower, and are visited by a nurse for an assessment. (Clagg Declaration, Doc. 51-3 at ¶ 11).

Defendants have submitted evidence that a reasonable amount of force was employed in response to plaintiff's actions on July 22, 2015 and August 21, 2015 and applied in a good faith effort to restore discipline. (Doc. 51-5 at 1-5). Defendants have also submitted evidence that plaintiff received medical treatment for both incidents. (*See* Medical Exam Report from August 21, 2015, Doc. 51-4; Clagg Declaration, Doc. 51-3 at ¶ 11; Use of Force Reports and Medical Exam Report from July 22, 2015, Doc. 51-5 at 1-5).

In opposing defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston*, 832 F. Supp.2d at 849. He "cannot rest on the mere allegations of the pleadings." *Id.* Plaintiff's unsworn amended complaint,[7] which was not signed under penalty of perjury, does not constitute evidence to show that there is a genuine issue of material fact for trial. (*See* Doc. 7); *see Maston*, 832 F. Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

Thus, because plaintiff has failed to submit any evidence creating a genuine issue of fact as to whether defendants' use of force was reasonable under the circumstances and whether defendants denied him proper medical treatment, summary judgment should be granted to

---

[7] Plaintiff's complaint from June 10, 2016 is unverified and does not satisfy his burden to respond to defendants' motion for summary judgment. (*See* Doc. 7). Plaintiff's amended complaint states: "I verify that all facts mention [sic] in motion to amend complaint is true to the best of my knowledge." (*Id.*). A verified complaint must strictly conform with the requirements of 28 U.S.C. § 1746: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." Plaintiff's verification is inadequate and omits the critical reference to penalty of perjury. *See Howard v. Taggart*, 2007 WL 2840369, at *2 (N.D. Ohio Sept. 27, 2007). *See also Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992) (explaining § 1746 sets forth the necessary language that a complaint containing verification must satisfy, which includes "penalty of perjury" language). Accordingly, plaintiff's amended complaint will not be construed as a verified complaint for purposes of deciding defendants' motion for summary judgment.

defendants Keating, Andre, Hale, Stone, and Crabtree—those alleged to be involved in the direct pepper spray incidents from July 22, 2015 and August 21, 2015—on plaintiff's Eighth Amendment excessive force and denial of medical care claims.[8]

### D. Indirect pepper spray exposure incidents—February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016

Plaintiff's amended complaint from June 10, 2016 relates to incidents when he was indirectly exposed to pepper spray. (Doc. 5). On February 5, 2016, pepper spray vapors drifted into plaintiff's cell after an inmate in a nearby cell was sprayed. (Doc. 5 at 7). Plaintiff alleges the incident caused him "great pain and suffering" and he suffered problems breathing, as well as swelling of the mucous membranes, a runny nose, burning eyes, and headaches. (*Id.*). Plaintiff states that he was not given proper ventilation or a shower, and the pepper spray soiled his sheets, blankets, and clothes. (*Id.*). Plaintiff claims that defendant Dyer and Lieutenant Smith were deliberately indifferent to his medical needs. (*Id.*). Pepper spray drifted into plaintiff's cell again on February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016. (*Id.* at 5-8). He alleges he suffered similar adverse health effects as when pepper spray drifted into his cell on February 5, 2016. (*See id.*). Plaintiff claims that the following defendants were deliberately indifferent to his medical needs for these indirect pepper spray incidents: (1) defendant Grooms, in relation to the incident on February 23, 2016; (2) defendants Joseph, Esham, Queen, and Distel, in relation to the incident on March 7, 2016; (3) defendants Bailey and Grooms, in relation to the incident on March 28, 2016; and (4) defendant Crabtree and Officer Mullens, in relation to the incident on March 31, 2016. (*Id.*)

---

[8] As previously indicated, *supra* n.1, Lieutenant Smith and Officer Porter have not yet been served with process in this action. In light of the above, awaiting service of process on these individual defendants would be futile because, even if they are served, summary judgment should be granted in their favor for the same reasons as described above.

Defendants argue that summary judgment should be granted in their favor, explaining that plaintiff has only "complained of physical injury resulting in minor contacts from the passive OC spray from passive or second hand spray from by [sic] Defendants." (Doc. 51 at 11). Thus, defendants contend that any passive application of pepper spray resulted in no more than a *de minimus* injury, if at all, to plaintiff. (*Id.*). Defendants contend that there is only one entry in plaintiff's medical records regarding discomfort from OC spray, which was in relation to the August 21, 2015 direct pepper spray exposure incident. (*Id.*). In instances of secondhand exposure to pepper spray, defendants maintain that plaintiff had soap and water available in his cell for decontamination purposes and has failed to prove that he was not offered these supplies for decontamination. (*Id.* at 11-12).

Defendants have submitted evidence demonstrating that plaintiff only complained of discomfort from pepper spray on one occasion on August 21, 2015 and medical records show no other infirmary visits or examinations during the relevant time period. (Clagg Declaration, Doc. 51-3 at ¶ 7). Defendants have also submitted evidence demonstrating that in instances of ambient or secondhand exposure to pepper spray, inmates have soap and water inside their cells for decontamination. (*Id.* at ¶ 12).

In this case, the record demonstrates no dispute as to whether defendants were deliberately indifferent to plaintiff's medical needs when pepper spray drifted into his cell on February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016. As a matter of law, plaintiff's verified complaint[9] does not establish that he suffered from a

---

[9] Unlike plaintiff's amended complaint described above, plaintiff's complaint contains the requisite "penalty of perjury" language under 28 U.S.C § 1746. (*See* Doc. 5). Thus, plaintiff's verified complaint constitutes evidence in opposition of defendants' motion for summary judgment. (See Doc. 5). "A verified complaint . . . satisfies the burden of the nonmovant to respond" to a motion for summary judgment, unlike "mere allegations or denials" in unverified pleadings. *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc). *See also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a "verified complaint . . .carries the same weight as would an affidavit for purposes of summary judgment").

"sufficiently serious" medical need as required for an Eighth Amendment violation. Plaintiff has not shown that any medical diagnosis made him particularly vulnerable to chemical agent exposure, nor has he established a serious medical need beyond the normal effects associated with pepper spray exposure. *See McGuire v. Union Cty. Jail*, No. 4:13-cv-P28, 2013 WL 4520282, at *5-6 (W.D. Ky. Aug. 26, 2013) (plaintiff failed to show how complaints of eye burning and runny nose after being pepper sprayed rose to the level of a "sufficiently serious" medical need); *Censke v. Unknown Ekdahl*, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes and skin . . . do not constitute a serious medical need for purposes of the Eighth Amendment'); *Reeves v. Sweet*, No. 1:04-cv-605, 2005 WL 2417659, at *4 (W.D. Mich. Sept. 30, 2005) ("although [p]laintiff complains that he had breathing difficulties [after secondhand exposure to pepper spray], he has failed to present facts demonstrating that those difficulties were sufficiently different in degree or type from those experienced by others exposed to the spray, and he has asserted no adverse medical consequences from the exposure."). Moreover, the evidence submitted by defendants establishes that plaintiff's medical records show no request for medical care on these dates and that plaintiff had supplies inside his cell for self-decontamination. Accordingly, because plaintiff has failed to establish that he had a "sufficiently serious" medical need, summary judgment should be granted to defendants Dyer, Grooms, Joseph, Eshem, Queen, Distel, Bailey, and Crabtree—those defendants alleged to be involved in the indirect pepper spray incidents from February 5, 2016, February 23, 2016, March 7, 2016, March 28, 2016, and March 31, 2016—on plaintiff's Eighth Amendment denial of medical care claims.[10]

---

[10] As previously indicated, *supra* n.1, Lieutenant Smith and Officer Mullens have not yet been served with process in this action. In light of the above, awaiting service of process on these individual defendants would be futile because, even if they are served, summary judgment should be granted in their favor for the same reasons as described above.

### E. Remaining claims against defendants Erdos and Lightle

Plaintiff's amended complaint from June 8, 2016 added Warden Ron Erdos to the lawsuit as a defendant, alleging deliberate indifference and a failure to train to prevent harm. (*See* Doc. 8).

Defendant Erdos argues that summary judgment should be granted in his favor because plaintiff seeks to hold him liable in his position as Warden of SOCF based on the doctrine of *respondeat superior*, which is not a proper basis for liability under § 1983. (Doc. 51 at 13-15). Defendant Erdos contends that plaintiff fails to establish that he actually participated in the alleged use of force or denial of medical care incidents. (*Id.*).

To prove a claim for supervisor liability against defendant Erdos, plaintiff must show that Erdos "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty, Ky.*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982)). *See also McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied,* 530 U.S. 1264 (2000). "[A] prerequisite to [liability] is that a constitutional violation has occurred." *Watson v. City of Marysville*, No. 12-3478, 2013 WL 1224089, at *3 (6th Cir. Mar. 26, 2013) (citing *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012)); *McQueen*, 433 F.3d at 470 ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct . . . ."). Because defendants committed no constitutional violation, as explained above, his claims against defendant Erdos must fail as a matter of law. Accordingly, summary judgment should be granted in defendant Erdos' favor.

Likewise, plaintiff's claims against defendant Lightle fail as a matter of law. Plaintiff vaguely asserts in his verified amended complaint that defendant Lightle was "deliberately

indifferent to my safety by virtue of failing to investigate and/or take corrective action" when she denied him a grievance form in relation to the pepper spray incidents on February 5, 2016 and March 31, 2016. (Doc. 5 at 7-8). However, prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" are not subject to liability under § 1983. *See, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Summary judgment should therefore be granted in defendant Lightle's favor.

## VI. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1.  Defendants' motion for summary judgment (Doc. 51) be **GRANTED**;[11] and

2.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

It is **ORDERED** that:

1.  Plaintiff's motion to compel (Doc. 68) is **DENIED.**

2.  Plaintiff's request for a further extension of time under Rule 56(d) (Doc. 69) is **DENIED.**

Date: _2/21/18_

Karen L. Litkovitz
United States Magistrate Judge

---

[11] The Court need not reach defendants' qualified immunity and Eleventh Amendment arguments since it has determined that there is no genuine dispute as to whether defendants violated plaintiff's Eighth Amendment rights and summary judgment should be granted in their favor.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JERONE MCDOUGALD,
    Plaintiff,

vs.

LIEUTENANT ESHAM, et al.,
    Defendants.

Case No: 1:16-cv-497

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).